MICHIGAN GOOD ROADS FEDERATION *v.* STATE BOARD
OF CANVASSERS.

NICHOLS *v.* SAME.

1. CONSTITUTIONAL LAW—IMMEDIATE EFFECT ACTS—STATE FUNC-
    TIONS.

    The purpose behind the permission in the Constitution to give
    appropriation acts for State institutions immediate effect is
    to enable the State to exercise its various functions free from
    financial embarrassment (Const 1908, art 5, § 1).

2. SAME—STATE INSTITUTIONS—APPROPRIATIONS.

    The term "State institutions" as used in provision of Constitution
    excepting statutes making appropriations for State institu-
    tions from referendum is used in a broad sense to include
    all organized departments of the State to which the legis-
    lature delegates the exercise of State functions (Const 1908,
    art 5, § 1).

3. SAME—STATE INSTITUTIONS—APPROPRIATIONS—STATE HIGHWAY
    DEPARTMENT—COUNTY ROAD COMMISSIONS—MUNICIPAL CORPORA-
    TIONS—HIGHWAYS.

    The State highway department, the several county road com-
    missions and the incorporated cities and villages are State
    institutions within the purview of the provision of the Consti-
    tution excepting acts making appropriations for State insti-
    tutions, insofar as such agencies are exercising the State func-
    tion of building roads with funds supplied by the State (Const
    1908, art 5, § 1; CL 1948, § 207.118b, as added by PA 1951,
    No 54).

4. STATUTES—IN PARI MATERIA.

    Acts *in pari materia* must be considered and construed together.

5. SAME—TAXATION—APPROPRIATIONS—REFERENDUM.

    Statute which imposed taxes upon sale or use of motor vehicle
    fuels and appropriated the proceeds thereof to the State high-
    way department, the several county road commissions and in-
    corporated cities and villages in the manner and for the
    specific highway purposes prescribed by law, as one of 5

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5, 7] 28 Am Jur, Initiative and Referendum § 9.
[1–3, 5, 7] Construction and application of constitutional or statu-
    tory provisions expressly excepting certain laws from refer-
    endum. 146 ALR 284.
[4] 50 Am Jur, Statutes §§ 348–351; 51 Am Jur, Taxation § 312.
[5, 7] Generally as to appropriations for public purposes, see 42
    Am Jur, Public Funds § 57 *et seq.*

acts which became effective at the same time, of which another act provided for allocation of funds *held,* an appropriation act for a State institution for highway purposes, hence, not subject to a referendum (Const 1908, art 5, § 1; CL 1948, § 207.118b, as added by PA 1951, No 54).

6. CONSTITUTIONAL LAW—INCREASE IN MOTOR FUEL TAXES A LEGISLATIVE FUNCTION.

The advisability or necessity for increasing motor fuel taxes is a legislative function, outside the jurisdiction of the court.

7. TAXATION—APPROPRIATION—STATEMENT OF OBJECT.

Appropriation of moneys, collected under motor fuel tax act, to various enumerated State agencies for specific highway purposes to be prescribed by other acts which became effective at the same time as the act sought to be subjected to referendum, made a proper appropriation of money for use of State institutions for highway purposes and did not violate provision of Constitution requiring that laws imposing a tax distinctly state the tax and the objects to which it was to be applied (Const 1908, art 10, § 6; CL 1948, § 207.118b, as added by PA 1951, No 54).

8. PROHIBITION—STATUTES—REFERENDUM.

Writ of prohibition to prevent certification of statute to the electors on a referendum is granted, where statute made an appropriation of funds for State institutions and was not subject to a referendum (Const 1908, art 5, § 1; CL 1948, § 207.118b, as added by PA 1951, No 54).

9. COSTS—PUBLIC QUESTION—REFERENDUM OF STATUTE.

No costs are allowed in proceeding to prevent State board of canvassers from certifying a statute to the electors on a referendum, a public question being involved (Const 1908, art 5, § 1; CL 1948, § 208.118b, as added by PA 1951, No 54).

Petition by Michigan Good Roads Federation and Lawrence A. Rubin for writ of prohibition and mandamus to prevent State Board of Canvassers from placing question of referendum of PA 1952, No 54, on ballot.

Petition by Haskell L. Nichols for writ of mandamus for same relief. City of Ann Arbor, City of Detroit and County Road Association of Michigan intervene as parties plaintiff. Bernard Hopkins intervenes as party defendant.

Submitted April 8, 1952. (Calendar No. 45,407.) Writ granted May 16, 1952.

*Hubbard, Fox & Thomas,* for plaintiffs Michigan Good Roads Federation and Rubin.

*Haskell L. Nichols, Waldo C. Granse* and *James M. Davey,* for plaintiff Nichols and intervenor County Road Association.

*William M. Laird,* City Attorney (*John R. Laird,* of counsel), for intervenor City of Ann Arbor.

*Paul T. Dwyer,* Acting Corporation Counsel, *Andrew DiMaggio* and *Robert Reese,* Assistants Corporation Counsel, for intervenor City of Detroit.

*Rothe, Marston, Bohn & Mazey* (*Theodore Sachs,* of counsel), for intervening defendant.

*Frank G. Millard,* Attorney General, and *Edmund E. Shepherd,* Solicitor General, for defendants.

*Amici Curiae:*

*Alvin G. Dahlem,* City Attorney, City of Jackson.

*Orph C. Holmes,* City Attorney, City of Ferndale.

*Fred N. Searl,* City Attorney, *John E. Damon,* Assistant City Attorney, City of Grand Rapids.

*Charles A. Telfer,* Assistant City Attorney, City of Port Huron.

*Charles P. Van Note,* City Attorney, City of Lansing.

*Joel H. Kahn,* City Attorney, City of Midland.

*Richard Scatterday,* Assistant City Attorney, City of Battle Creek.

*Dale H. Fillmore,* Corporation Counsel (*Robert E. Childs,* of counsel), City of Dearborn.

*Crawford S. Reilley,* Assistant City Attorney, City of Highland Park.

BOYLES, J.   This case calls for decision whether Act 54, PA 1951, is subject to a referendum under the provisions of the Michigan Constitution (1908), art 5, § 1.   A sufficient number of petitions have been filed with the secretary of State to require a referendum.   Petitions have been filed in this Court for a writ of prohibition directed to the State board of canvassers, to prevent the certification of said act to the electors on a referendum.   We directed the board of canvassers to show cause why said writ should not issue, and stayed all proceedings until further order of the Court.   Various cities and other interested parties have been granted leave to intervene and have filed helpful briefs.   The question has been submitted.

Said Act 54, PA 1951, in ch 1, § 2, increases the gasoline tax* from 3 cents to 4½ cents per gallon, and in ch 2, § 22, increases the diesel motor fuel tax† from 5 cents to 6 cents per gallon.   These increases are opposed by the petitioners who are seeking the referendum.   Article 5, § 1, of the Michigan Constitution (1908), essential to decision here, providing for a referendum on the legislative act, reads:

"The legislative power of the State of Michigan is vested in a senate and house of representatives; but the people reserve to themselves the power to propose legislative measures, resolutions and laws; to enact or reject the same at the polls independently of the legislature; and to approve or reject at the polls any act passed by the legislature, *except acts making appropriations for State institutions* and to meet deficiencies in State funds."

The italicized part, *supra,* is relied on by plaintiffs who have petitioned this Court for the writ, as a bar

---

* PA 1927, No 150 (CL 1948, § 207.101 *et seq.* [Stat Ann 1950 Rev, § 7.291 *et seq.* ]).

† PA 1947, No 319 (CL 1948, § 207.201 *et seq.* [Stat Ann 1950 Rev § 7.339(1) *et seq.*]).

to a referendum. Plaintiffs claim that Act 54, PA 1951, makes appropriations for State institutions. Chapter 1, § 18b‡ of said act, which plaintiffs claim appropriates the money collected under the act for State institutions, provides:

"All sums of money received and collected under the provisions of this act, except the license fees provided for herein, shall be deposited in the State treasury to the credit of the motor vehicle highway fund and, after the payment of the necessary expenses incurred in the enforcement of this act, are hereby appropriated, allocated. and apportioned therefrom to the State highway department, the several county road commissions, and incorporated cities and villages of the State in the manner and for the specific highway purposes prescribed by law."

Thus, the question before us narrows down to whether section 18b of said act, hereinbefore quoted, is an appropriation for State institutions. If so, the act is not subject to a referendum. It expressly appropriates the money collected under the gasoline tax and diesel motor fuel tax, to the State highway department, the several county road commissions, and the incorporated cities and villages. Are they State institutions?

In *Detroit Automobile Club* v. *Secretary of State*, 230 Mich 623, this Court held that the State highway department is a State institution. It reads:

"Considering these constitutional exceptions in the order stated, the first question to be determined is whether this is an act making appropriations for a State institution. It appropriates money for the use of the highway department in constructing and maintaining the highways of the State. Is the highway department a State institution within the meaning of the Constitution? The question is not solely

‡ CL 1948, § 207.118b, as added by PA 1951, No 54 (Stat Ann 1951 Cum Supp § 7.308[2]).—REPORTER.

whether the highway department may be correctly termed a State institution, but rather whether, in view of the functions which it exercises, it comes within the meaning of that term as used in the Constitution. It is not difficult to determine what the framers of the Constitution had in mind. It is clear that by permitting immediate effect to be given to appropriation acts for State institutions, it was their purpose to enable the State to exercise its various functions free from financial embarrassment. The highway department exercises State functions. It was created by the legislature for that purpose. It must have money to carry on its activities. Without the money appropriated by this act for its immediate use, it would cease to function. The constitutional purpose was to prevent such a contingency. And so we hold it a fair conclusion that the framers of the Constitution used the term State institutions in a broad sense intending to include all organized departments of the State to which the legislature had delegated or should delegate the exercise of State functions. * * *

"We are of the opinion that the State highway department is a State institution within the meaning of the Constitution, and that, therefore, this act, which makes an appropriation for its use, is not subject to the referendum."

In *Moreton* v. *Secretary of State,* 240 Mich 584, the Court held that an appropriation of the money received from the gasoline tax for highway purposes, under substantially the same conditions as the 1951 act now challenged, was not subject to referendum. The act there under consideration likewise provided that the money received under the act be deposited in the State treasury to the credit of the State highway fund, and appropriated therefrom (in part) to be paid to the several county treasurers, and to each city and village within which State trunk line high-

ways were contained, for highway purposes. The Court said:

"The question is whether the appropriations provided in the act are for State institutions or to meet deficiencies in State funds. It is clear that except as to subdivisions c and c-1, of section 19, the act makes appropriations for State institutions in the constitutional sense as held by this Court in *Detroit Automobile Club* v. *Secretary of State*, 230 Mich 623. The only meritorious controversy revolves around subdivisions c and c-1. We will therefore confine our discussion on this feature of the case to those sections of the law which make appropriations to the several counties, cities, and villages of the State for highway purposes. * * *

"It is a part of the legislative highway policy, as shown by this and previous legislation, to enlist the aid of the counties in carrying on the elaborate program of road building to which it is committed. While so engaged in building roads for State purposes, under the direction and supervision of the State administrative board, with money supplied by the State at large, are the counties not exercising State functions? If they are, the money appropriated for that purpose is for State institutions within the meaning of the Constitution. It ought to be kept in mind that this is not a case where the counties are to build county roads as is ordinarily done with local appropriations. Here the State at large furnishes the money and selects the counties as the agencies through which it is to be expended for State purposes. So, to bring these appropriations within the constitutional exemption from referendum, it is not necessary to hold that the counties are State institutions. They are not, but, in respect to these appropriations, they are cooperating with the State in exercising State functions. They are not acting independently, but as agencies of the State in expending the State money for State purposes. The building and maintenance of good public roads have

become important State functions in Michigan. These appropriations were made to enable it to function in that regard, and, being made for that purpose, they are not subject to referendum. To hold otherwise would be to give the words 'State institutions' such a restricted meaning as to defeat the constitutional purpose, which is to save the State from financial embarrassment in exercising any of its State functions. And, in our view, it makes no difference whether it exercises them directly or through other organized agencies selected for that purpose. Nor does it matter whether the appropriation goes into the county treasury or is retained in the State highway fund by the State treasurer, so long as it is used for highway purposes under the direction and supervision of the State administrative board.

"For these reasons, we hold that the act is not subject to referendum."

The State highway department, the several county road commissions and the incorporated cities and villages are State institutions within the purview of the Constitution and legislative intent of said Act 54, P.A. 1951.

The defendants' return to our order to show cause does not contest, and they have not filed a brief. Counsel for the intervening defendant asserts that even if it should be held that the State highway department and the counties, cities and villages who receive highway funds from State appropriations, are State institutions, still we should hold that Act 54 does not make an appropriation. While chapter 2, § 34, of said Act 54 *appropriates* the money collected under the act for the same purposes considered by the Court in the *Moreton Case, supra,* said defendant asserts that Act 51, P.A. 1951, not Act 54, actually makes the appropriation. Plaintiffs, pointing to the provision in Act 54 stating that the moneys received under said act are appropriated and allocated from the State treasury to the State high-

way department, counties, cities and villages, "for the specific highway purposes *prescribed by law*," assert that Act 54 makes the appropriation, while certain other acts, enacted and effective at the same time, designate the manner in which, and the specific highway purposes for which, the gasoline tax and diesel motor fuel tax shall be used.

Acts 51 to 55, inclusive, PA 1951, to which plaintiffs thus point, constitute a comprehensive system for the collecting of specific taxes on motor vehicles and motor vehicle fuels, the allocation of funds therefrom and the use thereof for highway purposes. They were all enacted by the 1951 legislature and became effective at the same time. Construed together, they provide for levying the specific taxes and the use thereof for highway purposes, the manner in which the said appropriations for highway purposes are allocated to said institutions, and the specific highway purposes for which they are to be used by said institutions. Act 51 allocates said funds, after payment of necessary expenses, as follows: 44% to the State highway department, 37% to the several county road commissions, and 19% to incorporated cities and villages which contain State trunk line highways; and declares that all of it shall be used only for highway purposes.

Acts *in pari materia* must be considered and construed together. Act 54, levying the specific tax and appropriating it to these institutions "for the specific highway purposes prescribed by law," necessarily points directly to those other acts for the apportioning of said moneys and for directing the manner of its use. If considered separately, without construing them together, they would be unworkable. Furthermore, if Act 51, instead of Act 54, appropriates these moneys, then Act 51 as well as Act 54 would fall; because Act 51 expressly provides (section 23) that it shall not take effect unless Act 54 also

be enacted into law and become effective. Act 51 could not operate without Act 54, being without the funds appropriated by said Act 54.

In *State Highway Commissioner* v. *Detroit City Controller,* 331 Mich 337, the Court held that Act 51 is an act for the allocation and distribution of highway moneys collected under Act 54. It further held that these acts were *in pari materia,* to be considered together (p 358):

"It is the usual rule of statutory construction that apparently conflicting statutes should be construed, if possible, to give each full force and effect. As we said in *Rathbun* v. *State of Michigan,* 284 Mich 521, 544:

' " ' "Statutes *in pari materia* are to be construed together, and repeals by implication are not favored. The courts will regard all statutes upon the same general subject matter as part of one system, and later statutes should be construed as supplementary or complementary to those preceding them." *State* v. *Omaha Elevator Co.,* 75 Neb 637, 648 (106 NW 979, 110 NW 874).' * * *

"Had the legislature not again spoken on the subject, the foregoing discussion would have been sufficient, but in 1951 several acts were passed which materially affected the amounts of vehicular taxes and the method of distribution. We have reference to PA 1951, Nos 51 through 55. Only PA 1951, No 51, need concern us. It created the motor vehicle highway fund, the successor to the State highway fund. Rather than provide for piecemeal distribution of the moneys in the fund, as had been done previously, the act set up a comprehensive system of allocation to the commissioner and the various subordinate governmental units."

See, also, *Reed* v. *Secretary of State,* 327 Mich 108, where the Court said:

"Statutes *in pari materia* should be construed together, particularly when, as here, they were passed

or reenacted in the same legislative session and approved by the governor on the same day."

We hold that Act 54 appropriates the proceeds received in the State treasury from the specific tax imposed by Act 54 upon the sale or use of motor vehicle fuels.

Various briefs have been filed to indicate the importance of the increase in the gasoline tax to the intervening cities for highway purposes, and the serious consequences which would follow an upset of the act. As to that, the advisability or necessity for the increase is a legislative function, outside the jurisdiction of the Court. We need not comment on the propriety of the enactments.

Finally, counsel for the intervening defendant contends that the reference in Act 54 to other acts for the allocation, distribution and manner of use of the money collected under said Act 54 violates article 10, § 6, of the Michigan Constitution (1908), wherein it provides:

"Every law which imposes, continues or revives a tax shall distinctly state the tax, and the objects to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object."

This contention has been repudiated by the Court in considering a situation quite parallel to the present case. In *Lake Shore Coach Lines, Inc.,* v. *Secretary of State,* 327 Mich 146, the Court had under consideration PA 1947, No 319, imposing a specific tax upon the use of diesel motor fuel to propel vehicles upon the highways of the State. The Court said:

"Plaintiffs further claim that section 14 of the act in question violates article 10, § 6, of the Michigan State Constitution, which provides as follows:

" 'Every law which imposes, continues or revives a tax shall distinctly state the tax, and the objects

to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object.'

"The portion of the act in question which is claimed as offending against the section of the Constitution just cited is as follows (CL 1948, § 207.214 [Stat Ann 1947 Cum Supp § 7.339 (14)]):

" 'All sums of money received and collected by the secretary of State under the provisions of this act, except the license fees herein provided, shall be deposited in the State treasury to the credit of the State highway fund, and after the payment of the necessary expenses incurred in the enforcement of this act shall be used, disposed of, and appropriated in the manner provided for and to the uses and purposes provided in Act No 150 of the Public Acts of 1927, as amended.'

"Plaintiffs claim that because of the reference to PA 1927, No 150, as amended, the act contravenes the Constitution by making PA 1927, No 150, as amended, an essential part of the act under consideration, PA 1947, No 319.  *  *  *

"When we apply the reasoning in the *Moreton Case* [240 Mich 584], above cited, it becomes apparent that section 14 of Act No 319 sufficiently sets forth the objects to which the tax money realized shall be applied by prescribing the deposit in the State highway fund.  Article 10, § 6, Michigan State Constitution, does not forbid a reference to some other act, but does state that the tax and the objects to which it shall be applied shall be distinctly stated in the act.  Act No 319 does sufficiently state the tax and the objects of the tax without the reference following to the manner of the disposition of the funds, which latter under the ruling in the *Moreton Case* just cited, and so far as concerns compliance with article 10, § 6, may be treated as though unnecessary and superfluous.  The highway fund is a well recognized and very important fund in State affairs. When the legislature said that the diesel motor fuel tax in question should be deposited in the State treas-

ury to the credit of the State highway fund, there could be no doubt of the general object of the diesel motor fuel tax in question. Plaintiffs do not point out nor claim that PA 1927, No 150, as amended, provides a different object than the State highway fund."

See, also, *In re Appeal of Newton Packing Co.,* 279 Mich 139.

We conclude that said Act 54 imposes the specific tax upon the sale or use of motor vehicle fuel upon the public highways and appropriates the money collected therefrom to the use of State institutions for highway purposes. The legislative intent is plain that the gasoline tax, increased to $4\frac{1}{2}$ cents per gallon and the diesel motor fuel tax increased to 6 cents per gallon, by Act 54, PA 1951, is therein appropriated for highway purposes, to be allocated and used as such for such specific highway purposes as may be prescribed by other acts.

Act 54, PA 1951, is not subject to a referendum and the writ will issue. No costs, a public question being involved.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSH-NELL, SHARPE, and REID, JJ., concurred.