BOARDS OF COUNTY ROAD COMMISSIONERS v BOARD OF
STATE CANVASSERS

OPINION OF THE COURT

1. STATUTES—GASOLINE TAX—HIGHWAY FUND—IN PARI MATERIA—
    REFERENDUM—CONSTITUTIONAL LAW—APPROPRIATIONS—STATE
    INSTITUTIONS.

    An act raising the gasoline tax and an act, enacted on the same
    day, apportioning and appropriating the monies in the highway
    fund are *in pari materia;* the act raising the gasoline tax is
    exempt under the Michigan constitution from referendum be-
    cause, read together with the act appropriating the monies in
    the highway fund, it makes "appropriations for state institu-
    tions" (Const 1963, art 2, § 9; 1972 PA 326; 1972 PA 327).

2. CONSTITUTIONAL LAW—CONSTRUCTION—REFERENDUM.

    Under a system of government based on grants of power from the
    people, constitutional provisions by which the people reserve to
    themselves a direct legislative voice ought to be liberally con-
    strued but, there are exceptions to the right of referendum, for
    practical reasons, the people's power or right of referendum has
    usually been subjected to certain constitutional restrictions.

3. STATUTES—HIGHWAY FUND—GASOLINE TAX—CONSTRUCTIONS—IN
    PARI MATERIA—TIE-BAR PROVISION.

    Michigan Court of Appeals correctly construed two acts, one
    apportioning and appropriating the monies in the highway
    fund and the other raising the gasoline tax, *in pari materia*
    where the acts were enacted on the same day as part of a
    single legislative program and each act included a so-called tie-
    bar provision that it "shall not take effect" until the other act
    is "enacted into law" (1972 PA 326; 1972 PA 327).

4. CONSTITUTIONAL LAW—JUDICIAL CONSTRUCTION—RETENTION OF
    PROVISION IN NEW CONSTITUTION.

    A constitutional provision incorporated into a new or revised
    constitution or amendment will be presumed to have been

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 73 Am Jur 2d, Statutes §§ 187–190.
[2, 4, 5] 16 Am Jur 2d, Constitutional Law § 101.
[6, 7] 5 Am Jur 2d, Appeal and Error §§ 786, 901.

retained with a knowledge of the settled judicial construction of that provision.

5. CONSTITUTIONAL LAW—REFERENDUM—CONSTRUCTION—CONSTITU-
   TIONAL CONVENTION—SUPREME COURT.
   The delegates to the 1961 Constitutional Convention are presumed to have known and to have understood the meaning ascribed in earlier decisions of the Michigan Supreme Court to the language of the 1908 Constitution; the language on referendums was retained by them in the 1963 Constitution without modification in response to the earlier decisions and under well-established principles, it is not open to the Michigan Supreme Court to place a new construction on this language (Const 1963, art 2, § 9).

DISSENTING OPINION

T. M. KAVANAGH, C. J., and WILLIAMS, J.

6. APPEAL AND ERROR—REFERENDUM—DUE PROCESS.
   *To deprive the people of such a valuable right as referendum, without adequate briefing, study and oral presentation deprives appellants of due process of law.*

DISSENTING OPINION

T. G. KAVANAGH, J.

7. APPEAL AND ERROR—REFERENDUM—DUE PROCESS.
   *Michigan Supreme Court should have granted leave to appeal in a referendum case; denial of leave was not a deprivation of due process, however.*

Appeal from Court of Appeals, Division 2, Holbrook, P. J., and R. B. Burns and T. M. Burns, JJ., granting writ of mandamus to restrain the Board of State Canvassers from making an official declaration of sufficiency of petitions for a referendum and holding that 1972 PA 326 is not subject to a referendum. (Docket Nos. 55,344, 55,366.) Decided May 21, 1974.

50 Mich App 89 affirmed.

Original action in Court of Appeals by the Boards of County Road Commissioners of the Counties of Van Buren, Genesee, Kent, Macomb,

Oakland and Wayne, and The County Road Association of Michigan, and Earl F. Rogers, Engineer-Director of the County Road Association of Michigan, against the Board of State Canvassers, for a writ of mandamus to permanently restrain the Board of State Canvassers from making an official declaration of sufficiency of petitions for a referendum of 1972 PA 326 and a determination that the act is not subject to a referendum. Russell D. Gould intervened as a defendant. Writ granted; 1972 PA 326 is not subject to a referendum. Defendants and intervening defendant appeal. Affirmed. Rehearing denied June 25, 1974.

*Tom Downs* and *Keller, Cohn, Downs & Svenson (John P. Cushman,* for Wayne County Road Commission, *Hillman, Baxter & Hammond* [by *William S. Farr],* for Kent County Road Commission, *L. W. McEntee,* for Oakland County Road Commission, *Robert F. Browning,* for Michigan Road Builders Association, Inc., *William Dietrich,* for City of Detroit DSR, *Daniel P. Dozier,* for Michigan UAW-CAP, *Patrick Hynes,* for City of Flint, *Michael Kell,* for Michigan Trucking Association, *Dickinson, Wright, McKean & Cudlip* [by *Thomas G. Kienbaum],* for Southeastern Michigan Transportation Authority, and *Marston, Sachs, O'Connell, Nunn & Freid,* for Michigan AFL-CIO, of counsel), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Solomon H. Bienefeld* and *Charles D. Hackney,* Assistants Attorney General, for defendant.

*Durant, Talbot, Grant & McQuarrie,* for intervening defendant.

PER CURIAM. Const 1963, art 2, § 9 reserves to the people "the power to approve or reject laws enacted by the legislature, called the referendum." This constitutional provision provides, however, that the power of referendum does not extend to acts "making appropriations for state institutions".

On March 29, 1973, petitions were filed with the Board of State Canvassers requesting a referendum on 1972 PA 326 (MCLA 207.102 *et seq.;* MSA 7.292 *et seq.),* which increased the motor vehicle gasoline tax.

The plaintiffs, the Boards of County Road Commissioners of a number of counties, commenced an original action in the Court of Appeals asserting that Act 326 is not subject to referendum and seeking a writ of mandamus permanently restraining the Board of State Canvassers from ruling on the sufficiency of the petitions.[1]

The question is whether Act 326 is exempt from a referendum on the ground that it makes "appropriations for state institutions".

Act 326, in addition to raising the gasoline tax from seven to nine cents a gallon, provides that the revenue derived from the tax, less license fees and necessary expenses, "shall be deposited in the state treasury to the credit of the motor vehicle highway fund."[2]

The Court of Appeals declined to hold that Act 326 standing by itself makes appropriations to state institutions. However, on the authority of *Michigan Good Roads Federation v State Board of Canvassers,* 333 Mich 352; 53 NW2d 481 (1952),

---

[1] Russell D. Gould, representing the persons who filed the petitions with the Board of State Canvassers, was permitted to intervene in this action as a party defendant.

[2] MCLA 207.118b; MSA 7.308(2). The quoted words replace language in 1951 PA 54, § 18b quoted in the text preceding fn 8.

the Court of Appeals, construing Act 326 *in pari materia* with 1972 PA 327, read them as "one act" making appropriations to state institutions and issued a writ of mandamus. *Boards of County Road Commissioners v Board of State Canvassers,* 50 Mich App 89, 107; 213 NW2d 298 (1973).

Act 327, enacted on the same day as Act 326,[3]

—creates a general transportation fund, primarily for public transportation ("mass transit") and appropriates a stated percentage of the highway fund revenue for this new fund;[4]

—provides, and this also is new, for an annual appropriation of $1,000,000 from the highway fund for a "critical bridge program * * * to provide financial assistance to highway authorities for the improvement or reconstruction of existing bridges or for the construction of bridges to replace existing bridges in whole or in part";[5]

—"apportion[s] and appropriate[s]" the remaining monies in the motor vehicle highway fund on a percentage basis to the department of state highways, to the county road commissions, and to incorporated cities and villages.[6]

---

[3] The Court of Appeals also considered 1972 PA 328, similarly enacted on the same day as Acts 326 and 327, as being *in pari materia* with these two acts. PA 328 raised the tax on marine gasoline and altered the percentage of net revenue derived from the gasoline tax on motor vehicles that would be credited to the state waterways fund. MCLA 281.509; MSA 3.534(9).

[4] MCLA 247.660b; MSA 9.1097(10c).

[5] MCLA 247.661b; MSA 9.1097(11b).

[6] MCLA 247.660; MSA 9.1097(10); which is § 10 in the 1951 and 1972 acts "apportions and appropriates" the remainder of the revenue as follows:

"(a) 44.5% thereof to the department of state highways, (b) 35.7% thereof to the several county road commissions of the state and (c) 19.8% thereof to the incorporated cities and villages of the state, to be distributed and used for highway purposes as hereinafter provided in this act."

Section 10 of 1951 PA 51 apportioned and appropriated the remainder of the revenue as follows: 44% to the state highway department,

We conclude that the Court of Appeals properly relied on *Michigan Good Roads Federation v State Board of Canvassers, supra,* which we decline to overrule. Acts 326 and 327 are *in pari materia.* Act 326 is exempt under the constitution from referendum because, read together with Act 327, it makes "appropriations for state institutions". We affirm the issuance of the writ of mandamus.

I

In *Kuhn v Department of Treasury,* 384 Mich 378, 385; 183 NW2d 796 (1971), this Court stated that "under a system of government based on grants of power from the people, constitutional provisions by which the people reserve to themselves a direct legislative voice ought to be liberally construed."

This is in accord with the general view. But in other jurisdictions, as in Michigan, there are exceptions to the right of referendum. "Generally the courts have held that the power of referendum should be construed liberally. However, for practical reasons, the people's power or right of referendum has usually been subjected to certain constitutional restrictions." *Anno: Referendum—Laws Excepted,* 100 ALR2d 314, 315.

The early Michigan constitutions did not provide for a right of referendum; legislative power was vested exclusively in the Legislature.[7] The amendment to Const 1908, art 5, § 1, which reserved to the people the right of referendum, excepted those legislative acts which make "appropriations for

37% to the several county road commissions, 19% to the incorporated cities and villages.

[7] Const 1835, art 4, § 1; Const 1850, art 4, § 1.

state institutions and to meet deficiencies in state funds."

This Court, construing this exception, held, in *Detroit Automobile Club v Secretary of State,* 230 Mich 623; 203 NW 529 (1925), that the state highway department is a state institution and that an act which levies a gasoline tax and makes an appropriation of the tax revenue for the use of the highway department is not subject to referendum and, in *Moreton v Secretary of State,* 240 Mich 584; 216 NW 450 (1927), that an act making appropriations to the counties of money received from the gasoline tax, to be used by them to build roads under the direction and supervision of the state, was not subject to referendum.

In *Michigan Good Roads Federation v State Board of Canvassers, supra,* sufficient petitions had been filed with the Secretary of State to require a referendum on 1951 PA 54. That act raised the tax on gasoline from three to four and one-half cents a gallon, provided that the net tax revenue be credited to the motor vehicle highway fund and "appropriated, allocated and apportioned" the fund's money to the state highway department, the several county road commissions and incorporated cities and villages "in the manner and for the specific highway purposes prescribed by law." 1951 PA 54, § 18b.

Yet § 10 of 1951 PA 51 "apportioned and appropriated" the money in the motor vehicle highway fund among the various governmental units on a fixed percentage basis (see footnote 6) in a manner repeated in subsequent acts through 1972 PA 327 now before us.[8]

---

[8] There is a well-recognized difference between merely authorizing an activity and actually appropriating the money to make it possible.

As phrased by the Supreme Court of Montana in *State ex rel Haynes v District Court,* 106 Mont 470, 477; 78 P2d 937, 942-943

A unanimous Court, declaring that Acts 51 and
54 of 1951 were part of "a comprehensive system
for the collecting of specific taxes on motor vehi-
cles and motor vehicle fuels, the allocation of
funds therefrom and the use thereof for highway
purposes" and noting that they were both enacted
by the Legislature at the same time, construed the
acts *in pari materia* and found Act 54—the act
which increased the gasoline tax—not subject to
referendum because, so read together with Act 51,
Act 54 appropriated money for state institutions,
and issued a writ prohibiting the State Board of
Canvassers from certifying the act for a referen-
dum.

## II

The defendants attempt to distinguish *Good
Roads* by asserting it was the Legislature's intent
to pass PA 326 and PA 327 as separate acts. We

(1938), the fundamental question is whether the "Act in itself autho-
rize[s] the expenditure of the money received into the state treasury
* * * without the aid of additional legislative action". (The Montana
Supreme Court determined that the licensing fee, fines and penalties
collected pursuant to a liquor regulation act were not an appropria-
tion and therefore were subject to referendum because "[t]he moneys
collected under the act, when placed in the two funds, are only
subject to disbursement by virtue of some other independent legisla-
tive direction.")

Similarly, the Missouri Supreme Court found an act which raised
the gasoline tax not to be an appropriation and held it subject to a
referendum. While the act allocated the revenue for several purposes,
it failed to actually appropriate the money. An additional legislative
act was deemed necessary to appropriate the funds so allocated.
*Heinkel v Toberman,* 360 Mo 58; 226 SW2d 1012 (1950).

In *Winebrenner v Salmon,* 155 Md 563; 142 A 723 (1928), the Court
of Appeals of Maryland held that an act raising the tax on gasoline
and appropriating the additional revenue to a special fund for distri-
bution for the construction of certain roads was an appropriation act
and not subject to referendum.

It appears that the bulk of the appropriations made by PA 326 and
PA 327 are complete. Money can be spent without additional legisla-
tive directive. *See* MCLA 247.661(a–c), 247.661b, 247.662, 247.663;
MSA 9.1097(11)(a–c), 9.1097(11b), 9.1097(12), 9.1097(13).

are, however, persuaded that the Court of Appeals correctly construed the two acts *in pari materia.*

The acts were enacted on the same day as part of a single legislative program. Each act included a so-called tie-bar provision that it "shall not take effect" until the other act is "enacted into law."[9]

While Act 327 (apportioning and appropriating the monies in the highway fund) would be viable even if Act 326 (raising the gasoline tax) were subjected to a referendum and defeated, as the motor vehicle highway fund would still be receiving and apportioning the net revenue from the former seven cents a gallon tax, it is apparent that the Legislature predicated the new appropriations for mass transit and the critical bridge program on a nine cents gasoline tax.

If these new appropriations were effective independently of the validity of the nine cents gasoline tax, a defeat of PA 326 would mean that the state highway department and county road commissioners would receive less money than before from the highway fund to finance previously authorized and contemplated programs. We are persuaded that was not the intention of the Legislature.

## III

The referendary provision and exceptions of the 1908 Constitution were retained in the 1963 Constitution as art 2, § 9 without change in the perti-

---

[9] The effectiveness of Act 327 was also made contingent on the approval and filing with the Secretary of State of a certain Senate Joint Resolution. The resolution was so approved and filed on December 22, 1972. It provides that at the next general election there shall be submitted to the voters the question whether the following additional language shall be added to art 9, § 9 of the constitution:

"None of the revenues from such specific taxes shall be used for any highway patrol purposes by law enforcement agencies. Not more than one eighteenth of the tax on motor fuels may be diverted from highway purposes for public transportation purposes as defined by law."

nent language.[10] Although this is our first opportunity to construe this language in the 1963 Constitution,[11] we are bound by the meaning given these very words in *Good Roads* and the earlier decisions.

The following principle of constitutional adjudication has been recognized by this Court:

> " 'Where a constitutional provision has received a settled judicial construction, and is afterwards incorporated into a new or revised constitution, or amendment, it will be presumed to have been retained with a knowledge of the previous construction, and courts will feel bound to adhere to it.' " *Richardson v Secretary of State,* 381 Mich 304, 311; 160 NW2d 883 (1968).[12]

In *Richardson* we applied this principle in adhering to the settled construction by this Court of the limitation on the eligibility of a member of the Legislature to receive "any civil appointment within this state from the governor * * * or from any other state authority during the term for which he is elected." Const 1963, art 4, § 9. Similarly, see *Young v Detroit City Clerk,* 389 Mich 333; 207 NW2d 126 (1973).[13]

---

[10] Except that the clause now reads, "making appropriations for state institutions *or* to meet deficiencies in state funds". (Emphasis added.)

[11] In *Kuhn v Department of Treasury,* 384 Mich 378; 183 NW2d 796 (1971), this Court construed the meaning of the exception to the right of referendum for acts passed "to meet deficiencies in state funds".

[12] Quoting 16 CJS, Constitutional Law, § 35, pp 114–115.

[13] "If we were reading art 4, § 9 outside of any historical or precedential context, we would undoubtedly read 'appointment' as just that, that is, designation by an appointing authority as opposed to 'election' by the people. We would interpret 'any civil appointment within this state' as any office within the geographical confines of the state, and thus include *local* as well as *state* offices.

"However, historically, as my Brother SWAINSON clearly points out, 'appointment' means 'election' as well as 'appointment'. Likewise historically (before the 1963 constitution which must be assumed to adopt it) 'any' means any *state* as opposed to *local* appointment." *Young v Detroit City Clerk,* 389 Mich 333, 358 (1973) (per WILLIAMS, J, concurring). (Emphasis by the author.)

Further, on recent consideration of the constitutional limitation on the incurment of state indebtedness, we referred to a judicial construction preceding the adoption of the 1963 Constitution:

"[W]hatever the logic of it, we are committed to its acceptance, since the people, presumably aware of the exception [created by the judicial construction preceding the 1963 Constitution], did not eliminate it in the 1963 Constitution." *Advisory Opinion re Constitutionality of 1973 PA 1 and 2,* 390 Mich 166, 176–177; 211 NW2d 28 (1973).

The construction placed by this Court on this exception to the right of referendum in the 1925 *Detroit Automobile Club,* 1927 *Moreton* and 1952 *Good Roads* cases may, indeed, in many instances deny the people a right to vote on new or increased taxes. If the question were one not previously considered, a different result might obtain. However, the identical question involving substantially the same language has been considered by this Court and settled.

The delegates to the 1961 Constitutional Convention are presumed to have known and to have understood the meaning ascribed in these earlier decisions to the language of the 1908 Constitution. This language was retained by them in the 1963 Constitution without modification in response to the earlier decisions. Under well-established principles, it is not open to us to place a new construction on this language.

Act 326, read together with Act 327, makes appropriations for state institutions and is not subject to referendum.

We grant leave to appeal and *sua sponte* enter a final decision affirming the judgment of the Court

of Appeals in this case.[14] No costs, a public question.

Swainson, Levin, M. S. Coleman, and J. W. Fitzgerald, JJ., concurred.

T. M. Kavanagh, C. J. *(dissenting)*. We dissent and would grant leave.

Although we have had this matter on our agenda since January, we are disposing of this very important matter without the benefit of briefing by the parties involved, oral argument, and the usual amount of independent research by the Justices themselves.

To deprive the people of such a valuable right as referendum, without adequate briefing, study and oral presentation, we believe deprives appellants of due process of law.

Williams, J., concurred with T. M. Kavanagh, C. J.

T. G. Kavanagh, J. *(dissenting)*. I agree with the Chief Justice that we should grant leave.

I do not perceive its denial as a deprivation of due process, however.

---

[14] "[G]reat cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment." *Northern Securities Co v United States,* 193 US 197, 400; 24 S Ct 436; 48 L Ed 679 (1904) (Holmes, J., dissenting). The principles of law applicable in this case are well settled in our jurisprudence. The Court of Appeals having correctly decided this case, we would, ordinarily, simply deny leave to appeal. However, because of the great public interest, we accompany our disposition with an expression of our views, arrived at after consideration of the application for leave to appeal, the answer, the briefs of counsel and our own independent research.

Defendants-appellants, the members of the Board of State Canvassers, represented by the Attorney General in this litigation, have filed a 17-page brief in support of their 9-page application for leave to appeal. The plaintiffs-appellees, Boards of County Road Commissioners, filed a 14-page brief and a 7-page answer. The intervening defendant-appellant, Russell D. Gould, filed a 6-page brief, and the plaintiffs-appellees filed a 9-page brief in response.