Weaver, J.
I respectfully dissent from the majority’s holding that 2000 Public Act 381 is exempt from the power of referendum of the Michigan Constitution.
Art 2, § 9 of the 1963 Michigan Constitution states that “[t]he power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds . . . .” This language was taken almost verbatim[1] from the 1908 Michigan Constitution, art 5, § 1 (amendment of 1913), which read:
The legislative power of the state of Michigan is vested in a senate and house of representatives; but the people reserve to themselves the power to propose legislative measures, resolutions and laws; to enact or reject the same at the polls independently of the Legislature; and to approve or reject at the polls any act passed by the Legislature, except acts making appropriations for state institutions and to meet deficiencies in state funds.” [Emphasis added.]
*415 The sole interpretation of the “acts making appropriations for state institutions” language of art 5, § 1 of the 1908 Constitution is found in the 1925 Michigan Supreme Court case, Detroit Automobile Club v Secretary of State, 230 Mich 623; 203 NW 529 (1925).
In Detroit Automobile Club, plaintiffs sought a writ of mandamus to compel the defendant to refrain from immediately enforcing 1925 PA 2 in order to allow a referendum on the law. The act at issue in Detroit Automobile Club appropriated money for the use of the Highway Department in constructing and maintaining the highways of the state. To determine whether the Legislature had the power to give the act immediate effect, and thus preclude a referendum, Detroit Automobile Club addressed the meaning of art 5, § 21[2] and art 5, § 1.
Detroit Automobile Club first addressed whether the Highway Department was a state institution within the meaning of art 5, § 1. Ultimately, the Court held that the Highway Department was a state institution within the meaning of the constitution. Detroit Automobile Club, supra at 626. In order to reach this holding, the Court ruled:
The question is not solely whether the highway department may be correctly termed a state institution, but rather whether, in view of the functions which it exercises, it comes within the meaning of that term as used in the Con *416 stitution. It is not difficult to determine what the framers of the Constitution had in mind. It is clear that, by permitting immediate effect to be given to appropriation acts for state institutions, it was their purpose to enable the state to exercise its various functions free from financial embarrassment. The highway department exercises state functions. It was created by the Legislature for that purpose. It must have money to carry on its activities. Without the money appropriated by this act for its immediate use, it would cease to function. The constitutional purpose was to prevent such a contingency. [Id., pp 625-626 (emphasis added).]
The Court viewed the purpose of the Legislature’s power to give an act of appropriation immediate effect as one necessary to permit the “state to exercise its various functions free from financial embarrassment” and to allow for state institutions to carry on state functions. Id. To that Court, this purpose of the framers was “not difficult to determine . . . .” Id. Detroit Automobile Club recognized the necessity of immediacy under these circumstances and it is under these circumstances that Detroit Automobile Club determined that an act was not subject to the people’s referendum power.
This Court reaffirmed its articulation of the purpose of the constitutional provision in Moreton v Secretary of State, 240 Mich 584, 592; 216 NW 450 (1927), where it declined to interpret the provision in a way which would “defeat the constitutional purpose, which is to save the State from financial embarrassment in exercising any of its State functions.” Further, this Court has cited Detroit Automobile Club's interpretation of this language without question or criticism in Co Rd Ass'n of Michigan v Bd of State Canvassers, 407 Mich 101, 112-113; 282 NW2d 774 (1979), and Michigan Good Rds Federation v Bd of *417 State Canvassers, 333 Mich 352, 356-357; 53 NW2d 481 (1952).[3]
When the framers of the 1963 Constitution included the language on “acts making appropriations for state institutions,” and the people approved it, it was with the knowledge of how this Court had previously interpreted this same language in Detroit Automobile Club. It is a well-established rule of constitutional construction that “[t]he framers of a Constitution are presumed to have a knowledge of existing laws, . . . and to act in reference to that knowledge . . . People v May, 3 Mich 598, 610 (1855). See also, Detroit v Chapin, 108 Mich 136, 142; 66 NW 587 (1895); Richardson v Secretary of State, 381 Mich 304, 311-313; 160 NW2d 883 (1968); Bds of Co Rd Comm’rs v Bd of State Canvassers, 391 Mich 666, 675; 218 NW2d 144 (1974).[4] Indeed, in reviewing “[t]he construction placed by this Court on this exception to the right of referendum in the 1925 Detroit Automobile Club, 1927 Moretón, and 1952 Good Roads cases,” this Court noted:
The delegates to the 1961 Constitutional Convention axe presumed to have known and to have understood the meaning ascribed in these earlier decisions to the language of the *418 1908 Constitution. This language was retained by them in the 1963 Constitution without modification in response to the earlier decisions. Under well-established principles, it is not open to us to place a new construction on this language. [Bds of Co Rd Comm’rs, supra at 676.]
Because the reasoning in Detroit Automobile Club was the sole and uncontradicted interpretation of “acts making appropriations for state institutions,” I believe that its reasoning is the best evidence of the framers understanding of this language and perhaps the explanation why there is so little discussion of its meaning in the record of the convention.
Applying Detroit Automobile Club to the facts of this case, the money appropriated in 2000 PA 381 is not necessary for the State Police to “exercise its various functions free from financial embarrassment,” but rather is necessary only to implement the act itself. Detroit Automobile Club, supra at 625-626. The State Police would not cease to function without the appropriation. The effect of referendum on 2000 PA 381 on the functioning of the State Police stands in contrast to the concerns of the Court in the “gas tax cases.” Moreton, supra; Good Roads, supra; and Co Rd Ass’n of Michigan, supra. In the “gas tax cases,” the Court concluded that the building of good roads is an important state function. Further, the Court concluded the appropriations at issue in the “gas tax cases” were made to “enable it to function in that regard, and, being made for that purpose, . . . are not subject to referendum.” Moreton, supra at 592.[5]
*419 Further, I believe that the majority fails to recognize the importance of the referendum, and this Court’s responsibility to protect the people’s power of the referendum, as derived from the constitution and as outlined in Michigan Farm Bureau v Hare, 379 Mich 387, 393; 151 NW2d 797 (1967):
There is nevertheless an overriding rule of constitutional construction which requires that the commonly understood referral process, forming as it does a specific power the people themselves have expressly reserved, be saved if possible as against conceivable if not likely evasion or parry by the legislature. The rule is, in substance, that no court should construe a clause or section of a constitution as to impede or defeat its generally understood ends when another construction thereof, equally concordant with the words and sense of that clause or section, will guard and enforce these ends.
Given the prior, uncontradicted, and equally concordant construction in Detroit Automobile Club, I believe we are precluded in this case from applying the constitutional provision in a way that would take the power of the referendum away from the people and give it to the Legislature.[6]
Under the majority’s opinion, if the Legislature were to drop the six zeros on the appropriation in 2000 PA 381, leaving an appropriation of $1 to the State Police, the act would nevertheless remain referendum-proof. I cannot believe that this outcome is the interpretation that “reasonable minds, the great *420 mass of the people themselves, would give it.” Traverse City Sch Dist v Attorney General, 384 Mich 390, 405; 185 NW2d 9 (1971), quoting Cooley’s Const Lim 81. I agree with Justice Cavanagh that by determining that the inclusion of a monetary provision in 2000 PA 381 circumvents the people’s reserved referendum power, the majority effectively holds “that the referendum power exists at the Legislature’s pleasure.” Ante at 412.
Finally, it is essential to recognize that the issue before us is one of constitutional interpretation. My opinion on the issue of constitutional law in this case does not address and should not be read to reflect one way or the other a position on the merits of the concealed weapons act passed by the Legislature.
I would affirm the result of the Court of Appeals.

 In 1974 this Court held that “The referendary provision and exceptions of the 1908 Constitution were retained in the 1963 Constitution as art 2, § 9 without change in the pertinent language.” Bds of Co Rd Comm’rs v Bd of State Canvassers, 391 Mich 666, 674-675; 218 NW2d 144 (1974) (emphasis added).

 Art 5, § 21 provided in pertinent part:
No act shall take effect or be in force until the expiration of ninety days from the end of the session at which the same is passed, except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety by a % vote of the members elected to each house.

 The 1939 decision in Todd v Hull, 288 Mich 521; 285 NW 46 (1939), did briefly discuss art 5, § 1 of the 1908 Constitution (the predecessor to Const 1963, ait 2, § 9), although Todd’s primary focus was on whether 1939 PA 3 was immediately necessary for the preservation of the public peace, health, or safety within the contemplation of art 5, § 21, of the 1908 Constitution. Moreover, this case was a four to four split decision, and has no precedential effect.

 Notably, in Advisory Opinion re Constitutionality of 1973 PA 1 and 2, 390 Mich 166, 176-177; 211 NW2d 28 (1973), we stated that a judicially created exception to a constitutional limitation of state indebtedness survived the ratification of the 1963 Constitution because, “whatever the logic,” the people were “presumably aware of the exception and did not eliminate it.”

 Thus, I agree with Justice Kelly that the gas tax cases do not support the majority conclusion, but, rather, are consistent with my position and that of my dissenting colleagues. See post at 424-425.

 Such considerations are relevant even though this Court has recently rejected the “absurd result” mode of statutory construction. People v McIntire, 461 Mich 147, 155-160; 599 NW2d 102 (1999). McIntire concerned a matter of statutory construction. We have long recognized that “ [construction of a constitution is a special situation where technical rules of statutory construction do not apply.” State Highway Comm v Vanderkloot, 392 Mich 159, 179; 220 NW2d 416 (1974).