Kelly, J.
(dissenting). I agree with my two dissenting colleagues that 2000 PA 381 (Act 381) does not constitute an act “making appropriations for state institutions” within the meaning of Const 1963, art 2, § 9. Thus, I would affirm the decision of the Court of Appeals and hold the act subject to referendum. I write separately, however, to make several points.
I. THE CONSTITUTIONAL MEANING OF “ACTS MAKING APPROPRIATIONS FOR STATE INSTITUTIONS”
In Const 1963, art 2, § 9, the people reserved the power of referendum. They limited it, saying it “does not extend to acts making appropriations for state institutions . . . .” The question in the present case is whether a referendum of Act 381 is possible, because the act makes “appropriations for state institutions.”
When construing provisions of our constitution, this Court uses the rale of “common understanding.” *421 See American Axle & Mfg, Inc v Hamtramck, 461 Mich 352, 362; 604 NW2d 330 (2000); Federated Publications, Inc v Michigan State Univ Bd of Trustees, 460 Mich 75, 84; 594 NW2d 491 (1999). The rule requires “ascertain[ing] as best the Court may the general understanding and therefore the uppermost or dominant purpose of the people when they approved the provision or provisions . . . .” Michigan Farm Bureau v Secretary of State, 379 Mich 387, 390-391; 151 NW2d 797 (1967); Traverse City Sch Dist v Attorney General, 384 Mich 390, 405-406; 185 NW2d 9 (1971).
We start by examining the provision’s plain meaning as understood by its ratifiers at the time of its adoption. See American Axle & Mfg, Inc, supra at 362. Article 2, § 9 provides:
The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative, and the power to approve or reject laws enacted by the legislature, called the referendum. The power of initiative extends only to laws which the legislature may enact under this constitution. The power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds and must be invoked in the manner prescribed by law within 90 days following the final adjournment of the legislative session at which the law was enacted. To invoke the initiative or referendum, petitions signed by a number of registered electors, not less than eight percent for initiative and five percent for referendum of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected shall be required.
In deciding this case, the majority makes much of the fact that Act 381 allocates $1,000,000 “to the department of state police . . . .” Ante at 366. It concludes that the $1,000,000 is an “appropriation” and *422 that the Department of State Police is a “state institution.” See ante at 366. Thus, it reasons, the power of referendum does not extend to Act 381. I disagree.
The majority’s error, in my view, arises in part because it fails to examine carefully the meaning of the phrase “acts making appropriations for state institutions.” In particular, it ignores the use of the word “for” in that phrase. In essence, it interprets art 2, § 9 to exempt from referendum any act that makes an appropriation “to” a state institution. This interpretation not only lacks support from the plain language of the article, it fails to appreciate the critical difference between the meanings of “to”[1] and “for.”
I would interpret art 2, § 9 to give effect to the words contained in it. The provision indicates that an act making an appropriation is exempt from referendum only if the appropriation is made “for” state institutions. The dictionary definition of “for,” in pertinent part, is “suiting the purposes or needs of,” “with the object or purpose of.”[2] “Purpose” is defined as “the reason for which something exists.”[3] Thus, a reasonable interpretation of art 2, § 9 is that legislation that contains an appropriation aimed at satisfying the purpose or reason for which a state institution exists is referendum-proof. Unless the appropriation is intended to support the core function of a state institution, it does not prevent the people from voting on the legislation in referendum.
*423 I would adopt this as the most reasonable interpretation of art 2, § 9.[4] Applying it to this case, I would conclude that Act 381 does not make an appropriation for a state institution.” Of the $1,000,000 that it allocates to the Department of State Police not a penny serves the central function for which the department exists. Instead, the appropriation implements the specific substantive provisions of the act.[5] None of the items funded relates to a core function of the state police department.[6] Thus, giving the words of art 2, § 9 and of Act 381 their plain meaning, the Act does not make appropriations “for state institutions” within the meaning of the constitution.[7]
My interpretation is consistent with this Court’s mandate that the right of referendum should be liberally construed. See, e.g., Kuhn v Dep’t of Treasury, 384 Mich 378, 385; 183 NW2d 796 (1971). Further *424 more, it prevents the Legislature from easily circumventing the people’s constitutional referendum power. With that end in mind, I agree with the views expressed by the Arizona Supreme Court in Warner v Secretary of State:[8]
To hold that an act may not be referred because incidentally it provides the funds to accomplish the ends it seeks would have the effect of practically nullifying the referendum provision of the Constitution, because many of the measures passed carry appropriations of this character, and it would be an easy matter to include such a provision in others and bring about the same result.
Ü. THE MAJORITY’S UNPRECEDENTED INTERPRETATION OF ART 2, § 9: A DEPARTURE FROM DECISIONS IN THE “GAS TAX” CASES[9]
The majority asserts that its conclusion, that Act 381 makes appropriations for state institutions, is consistent with “an unbroken line of decisions from this Court” in the gas tax cases. See ante at 366. Upon close inspection, one finds the assertion untrue. Rather, as will be seen, it is my interpretation, and that of my two dissenting colleagues, that is consistent with the gas tax cases.
To be sure, the gas tax cases are “unbroken” in the sense that all constitute proclamations from this Court that the challenged gas tax was nonreferable, *425 meaning that it could not be subject to a referendum vote. Notwithstanding, they do not support the majority’s conclusion.
In the earliest gas tax case, this Court stated that the appropriation exception in our constitution was intended to allow the state to exercise its various core functions free from financial embarrassment. See Detroit Automobile Club v Secretary of State, 230 Mich 623, 625; 203 NW 529 (1925). We explained:
It is clear that, by permitting immediate effect to be given to appropriation acts for state institutions, it was their purpose to enable the state to exercise its various functions free from financial embarrassment. The highway department exercises state functions. It was created by the Legislature for that purpose. It must have money to carry on its activities. Without the money appropriated by this act for its immediate use, it would cease to function. The constitutional purpose was to prevent such a contingency. [Id. at 625-626 (emphasis added).][10]
This interpretation was reiterated in the second gas tax case. See Moreton v Secretary of State, 240 Mich 584, 592; 216 NW 450 (1927). Moreton stated that an act that contained appropriations to enable state agencies “to function” was nonreferable. Detroit Automobile Club and Moreton contain the most thorough discussion of this Court’s interpretation of the *426 appropriation exception to the referendum power.[11] These cases demonstrate that the appropriation exception within art 2, § 9, was prompted by a fear of financial embarrassment. That could occur if, by referendum petition, an appropriation for a state institution were suspended pending a vote on a legislative act. See Moreton, supra at 592; Detroit Automobile Club, supra at 625.
The majority’s interpretation of art 2, § 9, impliedly rejects this Court’s “core function” interpretation of the phrase in our constitution exempting from referendum “acts making appropriations for state institutions.”[12] Therefore, its decision is not consistent with our prior decisions, at all. In fact, it seriously departs from them.
Given that Detroit Automobile Club represents the only substantive interpretation by this Court of “acts making appropriations for state institutions,” I agree with Justice Weaver that we should follow it. Doing so further supports the conclusion I have articulated: art 2, § 9 was intended to exempt from referendum only those acts containing grants that ensure the viability of state agency recipients, or as the Court of Appeals said, that support the agencies’ “core functions.” 246 Mich App 82; 630 NW2d 376 (2001).
*427 This interpretation renders the referendum exception consistent with the fundamental purpose of the general power of referendum. If the appropriation provision in an act is essential to a core purpose of a state institution, the act may not be referred. The risk is too great that the delay caused by a referendum vote would embarrass government and be detrimental to the public. On the other hand, where the appropriation provision is for a lesser function, not essential to the purpose of the department, the embarrassment problem does not arise. In the latter case, the people’s right to decide policy issues for themselves, which is the core purpose for which the people reserved the referendum power, should survive.
m. COURT CONSIDERATION OF THE LEGISLATURE’S motives
In one of the three concurring opinions joining the majority, my colleague “emphasize[s]” that the Legislature’s subjective motivation for making a $1,000,000 appropriation in Act 381 “is irrelevant.” Chief Justice Corrigan’s opinion at 367. In my view, this is an unfortunate exaggeration.
I acknowledge that, as a general rule, courts do not inquire into the motives of the Legislature in passing legislation. See Young v Ann Arbor, 267 Mich 241, 243; 255 NW 579 (1934). However, “[c]ourts are not supposed to be blinded bats.” Todd v Hull, 288 Mich 521, 543; 285 NW 46 (1939) (opinion of Bushnell, J.), quoting State ex rel Pollock v Becker, 289 Mo 660, 684; 233 SW 641, 646 (1921) (Graves, J., concurring).[13] *428 Hence, I would not be so quick to eliminate categorically the possibility that this Court may consider, where pertinent, relevant, and ascertainable, the Legislature’s motives in enacting a statute.
IV. REFERENDUM v INITIATIVE
I find objectionable, also, the palliation offered by two of my colleagues in the majority that the intervening defendant retains the direct remedy of the initiative process. Chief Justice Corrigan’s opinion at 366-367; Justice Young’s opinion at 389. Although I agree that the initiative process is available here, I find their observation misplaced.
First, any alternative remedy that exists is irrelevant to the issue before us: whether Act 381 constitutes an act “making appropriations for state institutions” within the meaning of art 2, § 9. Moreover, there are real and heightened practical difficulties associated with pursuing an initiative process, as compared with referendum. Not only does the initiative process require far more petition signatures than the referendum process, it also involves much more complicated procedures. Const 1963, art 2, § 9.
Also, this case presents the exact situation for which the referendum power was created. The power exists to permit citizens to suspend or annul laws passed by the Legislature until the people can vote on the merits of the law. See Alabama Freight v Hunt, 29 Ariz 419, 424; 242 P2d 658 (1926); see also Const 1963, art 2, § 9. Thus, if Act 381 is referable, it would not become effective until the people voted it should be the law of this state. Const 1963, art 2, § 9.
*429 The power of initiative, on the other hand, is intended to protect against a Legislature that fails to act.[14] It does not suspend the effective date of a law passed by the Legislature. Const 1963, art 2, § 9. Therefore, even if a successful initiative drive were pursued, the people would not vote on the law until at least November 2002. By then, Act 381 would have been operative for over sixteen months and potentially thousands of additional concealed weapons would be carried by thousands more Michiganians. Thus, from intervening defendant’s perspective, the availability of the initiative process is an unsatisfactory remedy.[15]
V. CONCLUSION
For these reasons, and for the reasons given by my two dissenting colleagues, I believe that Act 381 does not constitute “acts making appropriations for state institutions” within the meaning of art 2, § 9. Accordingly, I would affirm the decision of the Court of Appeals.

 “To” is defined, inter alia, as “used for expressing destination or appointed end.” Random House Webster’s College Dictionary, p 1401 (1995).

 Id. at 519. My use of the word “for” is not as Justice Markman asserts, “transmuted beyond recognition.” The meaning is straight out of the dictionary.

 Id. at 1096.

 In his concurring opinion, Justice Markman makes a “final query for the dissenters”: How could those who ratified the constitution have fashioned the words of art 2, § 9 more clearly? My response is that no wording change is needed. Art 2, § 9 means what it says. However, it would have to be reworded to accurately convey the meaning that Justice Markman and the majority give it. It would have to be changed to read: The power of referendum “does not extend to acts making appropriations to state institutions . . . .”

 Act 381 directs that the $1,000,000 be used, inter alia, to distribute trigger locks, provide permit application kits, take photographs of applicants, conduct a public safety campaign regarding Act 381’s requirements, and conduct fingerprint analysis and comparison reports required under the Act.

 Although Justice Young opines that the judiciary is ill-equipped to resolve what a state institution’s “core function” is, see ante at 390,1 have every confidence in the judiciary’s capabilities in this regard.

 Justice Markman creates a hypothetical example whereby the Legislature enacts a law that assigns to the Department of State Police responsibilities belonging to the Department of Corrections, and then allocates money to that end. See Justice Markman’s opinion at 401-402. I find his hypothetical example inapplicable. Act 381 does not transfer functions belonging to any other agency.

 39 Ariz 203, 215-216; 4 P2d 1000 (1931).

 Detroit Automobile Club v Secretary of State, 230 Mich 623; 203 NW 529 (1925); Moreton v Secretary of State, 240 Mich 584, 592; 216 NW 450 (1927); Good Rds Federation v State Bd of Canvassers, 333 Mich 352, 360; 53 NW2d 481 (1952); Bds of Co Rd Comm’rs v Bd of State Canvassers, 391 Mich 666; 218 NW2d 144 (1974); Co Rd Ass’n of Michigan v Bd of State Canvassers, 407 Mich 101, 116-118; 282 NW2d 774 (1979).

 In Detroit Automobile Club, the issue was whether 1925 PA 1 was subject to referendum under Const 1908, Art 5, § 1, amendment of 1913 (the predecessor to Const 1963, art 2, § 9), i.e., whether it made an appropriation “for [a] state institution]].” In his concurring opinion in this case, Justice Markman accurately notes that the portion of Detroit Automobile Club quoted above is taken from this Court’s discussion regarding the meaning of the term “state institution.” Nevertheless, it is clear that that discussion contained, also, an interpretation of the entire referendum exception provision. For this reason, I find the Court’s discussion in Detroit Automobile Club useful here.

 In two of the three later gas tax cases, this Court merely quoted or cited, then followed, our interpretation in Detroit Automobile Club of the appropriation exception to the power of referendum. See Michigan Good Rds Federation, supra at 356-357; Co Rd Ass’n, supra at 112-113. In the other gas tax case, this Court merely cited our holding in Detroit Automobile Club. See Co Rd Comm’rs, supra at 672.
In Todd v Hull, 288 Mich 521, 523-524; 285 NW 46 (1939), we discussed the predecessor to art 2, § 9 (Const 1908, art 5, § 1). However, Todd was a four to four decision and, therefore, has no precedential effect.

 Two of the concurring opinions do so, as well. See Justice Markman’s opinion at 391-392; Justice Young’s opinion at 376-388.

 The instant case brings to mind the ancient quotation that “[t]he voice is Jacob’s voice but the hands are the hands of Esau.” Todd, supra at 543 (opinion of Bushnell, J.).

 See Comment, Interpretation of initiatives by reference to similar statutes: Canons of construction do not adequately measure voter intent, 34 Santa Clara L R 945, 973 (1994), “legislative inaction is the reason the initiative process was established.”

 I note, also, that the issue in the instant case is one of constitutional interpretation. Accordingly, my opinion here addresses an issue of constitutional law. It does not address and ought not be construed to address the merits of Act 381.